IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RONALD P. ROSSI, JR., | * | |
| Appellant, | * | |
| v. | * | Civil Action No. GLR-21-2752 |
| US BANK NATIONAL ASSOCIATION, as Trustee for BAFC 2006-D, et al., | * | |
| | * | |
| Appellees. | * | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on the Appeal noted by Appellant Ronald Paul Rossi, Jr., from Orders issued by the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") entering judgment in favor of Appellees US Bank National Association, as Trustee for BAFC 2006-D, and Altisource Solutions, Inc., in Rossi's Adversary Proceeding, No. DER-18-12 (D.Md.) (the "Adversary Case"). (ECF Nos. 1, 1-1, 1-2).

Rossi presents two questions in the Appeal:

> A. Whether the lower court erred as a matter of law in granting summary judgment in favor of Appellees on Mr. Rossi's trespass claim (Count V of the Amended Complaint).
>
> B. Whether the lower court erred as a matter of law in ruling that there was no automatic stay under 11 U.S.C. § 362(a) in place by operation of law when Appellees engaged in acts to enforce a lien against Mr. Rossi's property (Count III of the Amended Complaint).

(Br. Appellant ["App't Br."] at 3, ECF No. 15). The Appeal is ripe for disposition and no hearing is necessary. See Fed.R.Bankr.P. 8019(b)(3); Local Rule 105.6 (D.Md. 2021). For the reasons set forth below, the Court will find in the negative as to both questions presented in the Appeal and affirm the Order of the Bankruptcy Court dismissing the Adversary Case.

## I.   BACKGROUND

### A.   Factual Background

In January 2006, Rossi borrowed $840,000 to build a dwelling at 2108 Rose Hill Lane in Gambrills, Maryland (the "Property"). (Adjustable Rate Note at 1, ECF No. 16-1).[1] He secured the repayment of the loan with a Deed of Trust on the Property (the "Deed of Trust"). (Deed Trust 1–3, 14, ECF No. 16-1).[2] Appellee US Bank National Association, as Trustee for BAFC 2006-D ("US Bank"), owns the beneficiary interest in the Deed of Trust. (Decl. D. Raleigh ["Raleigh Decl."] ¶ 16, ECF No. 16-1;[3] Apr. 23, 2021 Hr'g Tr. ["MSJ Hr'g"] at 8:18–19, ECF No. 15-1).[4] Under Paragraph 9 of Exhibit A to the Deed of

---

[1] The electronic document accessible at ECF No. 16-1 contains the Appendix to Appellees' Brief, which in turn contains several exhibits ("Appellees' Appendix"). The Adjustable Rate Note may be found at pp. 67–72 of Appellees' Appendix. References to exhibit page ranges refer to the pagination of the combined PDF document as it exists on the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[2] The Deed of Trust and its attachments may be found at pp. 73–93 of Appellees' Appendix.

[3] The Declaration of Derrick Raleigh, Senior Loan Analyst and authorized signer for PHH Mortgage Corporation, which currently services the subject loan for US Bank, may be found at pp. 59–62 of Appellees' Appendix.

[4] The electronic document accessible at ECF No. 15-1 contains the Appendix to Rossi's Brief, which in turn contains several exhibits (the "Rossi Appendix"). The April 23, 2021 Hearing Transcript may be found at pp. 136–52 of the Rossi Appendix.

Trust, if Rossi (i) "fails to perform the covenants and agreements contained" therein or (ii) "there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under" the Deed of Trust, "such as a proceeding in bankruptcy," then the "Lender may do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the Property and rights under" the Deed of Trust, "including protecting and/or assessing the value of the Property, and securing and/or repairing the Property." (Deed Trust at 7–8).

Rossi defaulted on the loan on September 2, 2008 and has made no payments on the loan since that time. (Raleigh Decl. ¶¶ 12, 13). On November 10, 2015, the substitute trustees under the Deed of Trust filed a foreclosure action against the Property in the Circuit Court for Anne Arundel County (the "Foreclosure Suit"). (Cir.Ct.Md. Docket at 1, ECF No. 16-1).[5] A foreclosure auction was scheduled to take place and did take place on June 28, 2017. (MSJ Hr'g at 8:19–24).

On June 27, 2017, the day before the foreclosure auction, Rossi became the subject of an involuntary bankruptcy petition in the Bankruptcy Court, Pet. No. 17-18747. (Am. Compl. ¶ 8, ECF No. 15-1).[6] Under 11 U.S.C. § 362(a), such a petition would ordinarily cause an automatic stay to go into effect as to any proceedings potentially affected by the bankruptcy, including foreclosure proceedings. Pursuant to 11 U.S.C. § 362(c), however, no stay was imposed because Rossi had filed two bankruptcy cases that were dismissed

---

[5] The docket for the Foreclosure Suit may be found at pp. 159–68 of Appellees' Appendix.

[6] Rossi's Amended Complaint may be found at pp. 37–62 of the Rossi Appendix.

within the prior one-year period.⁷ (MSJ Hr'g at 7:19–8:2); see 11 U.S.C. § 362(c)(4)(A)(i) ("[I]f 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed . . . the stay under subsection (a) shall not go into effect upon the filing of the later case.").

The next day, US Bank filed a motion for relief from the automatic stay, even though, in fact, no automatic stay was in place. (MSJ Hr'g at 8:25–9:3). Despite believing a stay was in place, US Bank continued to engage in efforts to enforce the mortgage lien, including obtaining a ratification of sale in the underlying foreclosure proceedings. (MSJ Hr'g at 9:3–9:6). The Bankruptcy Court—which was similarly unaware that the automatic stay was not in place—held a hearing on US Bank's request to lift the nonexistent stay on September 18, 2017. (Id.). The Bankruptcy Court denied the motion for relief from automatic stay and found that the actions US Bank took to continue the foreclosure sale had violated the automatic stay. (Sept. 18, 2017 Hr'g Tr. ["Mot. Relief Hr'g"] at 14:8–20, ECF No. 15-1).⁸ Specifically, the Bankruptcy Court held:

> The motion for relief from automatic stay is going to be denied. I don't believe that there is cause to grant relief from the automatic stay when a lender has acted to continue the foreclosure sale over the existence of the automatic stay during a course of several months leading up to a ratification.
>
> I am not finding today that there was a knowing or willful violation of the automatic stay. The lender has no

---

⁷ On July 12, 2016, Rossi filed a voluntary petition in the Bankruptcy Court under Petition No. 16-19317, and on March 15, 2017, Rossi filed another voluntary petition in the Bankruptcy Court under Petition No. 17-13537.

⁸ The September 18, 2017 Hearing Transcript may be found at pp. 21–36 of the Rossi Appendix.

> witnesses in court. I don't have any idea. The Debtor hasn't presented any evidence as to exactly what happened.
>
> But, at the very least, everything that has happened in state court after June 27th, when the involuntary petition was filed, is void; is in violation of the automatic stay.
>
> So, I am going to deny the motion because I don't think there is cause under these circumstances . . . I am not making any findings as to what the outcome of . . . some sort of motions for sanctions or relief against the lender for violation of the automatic stay under Section 362(k).

(Id. at 14:8–15:2).

Rossi alleges that Appellee Altisource Solutions, Inc. ("Altisource"), acted as an agent for US Bank and, in that capacity, directed its employees to inspect Rossi's property. (Am. Compl. ¶¶ 74, 76). Rossi further alleges that despite the ruling by the Bankruptcy Court, US Bank and Altisource continued to engage in efforts to enforce the mortgage lien, including filing a final auditor's report, declining to void the foreclosure sale, and visiting the Property to harass Rossi and his tenants and invitees. (Am. Compl. ¶¶ 63-66).

In his Opposition to Appellees' Motion for Summary Judgment in the Adversary Case, Rossi cited to his deposition to describe the alleged harassment he experienced:

> While awaiting this Court's ruling on their motion [f]or relief from automatic stay, Defendant US Bank through Defendant [Altisource] directed the Vendor to enter the property, interact with the occupants, deliver materials from Defendants, and photograph the property. Plaintiff testified that after his tenant Zadie moved in around April 2017 she was approached by the Vendor "a lot of times" causing Plaintiff to become "very embarrassed." [Dep. R. Rossi] at 54:8-15. He testified that the Vendor would give Zadia notices regarding the foreclosure and US Bank's alleged right to take possession of the property and evict all occupants. In addition to these interactions with Zadia, Plaintiff also testified that if he saw the materials left by

5

> Vendor before Zadia or another tenant, he "would take them and throw them away real quick." Id. at 54:16-17. Although he testified to only having a few examples of the materials left by the Vendor, Plaintiff explained "there's a lot more of them than I have here." Id. at 54:3-5.
>
> The unreasonableness of Defendants' agents is most evident in the interactions documented from September 24, 2017 to October 4, 2017. In that short 11-day period, Plaintiff's documentary evidence shows that Defendants' agents came to the property at least 3 times. Plaintiff testified that during these visits, Defendants' agents were "hostile to [Plaintiff]" even after Plaintiff advised the agents of [the Bankruptcy] Court's ruling . . . regarding Defendant US Bank's violations of the automatic stay and the order to rescind the foreclosure sale. Id. at 54:18-21.
>
> The evidence and testimony presented by Plaintiff shows that during one of the visits in this 11-day period, Defendants' agents were particularly hostile toward Plaintiff and the occupants of the property. On that day – September 30, 2017 – the agents returned to the property after having just been there less than a week before. Plaintiff's testimony is that they approached tenant Zadie as they had in the past and gave her even more materials indicating that the home had been sold and she would need to move. Plaintiff and his son, Anthony Rossi, then both testified that they had an altercation with the agents. According to their testimony, for which Defendants have offered no contradictory evidence, the agents were yelling at Plaintiff and his son and at one point revved the engine of their truck toward Plaintiff's son. [Dep. A. Rossi] at 11:10-15. Anthony Rossi testified that he was "fearful for the situation" and "had no idea if they were about to attack [him or] if they were about to try to run [him] over." Id. at 11:12-15.

(Opp'n Defs.' Mot. Summ. J. ["MSJ Opp'n"] at 18–20, ECF No. 15-1).[9]

---

[9] Rossi's Opposition to Appellee's Motion for Summary Judgment in the Adversary Case may be found at pp. 116–30 of the Rossi Appendix.

B. **Procedural Background**

Rossi filed the Adversary Case on January 16, 2018. (ECF No. 1-2). Rossi's fifteen-count Amended Complaint asserts four separate counts for willful violation of the automatic stay (Counts I–IV); trespass to land (Count V); respondeat superior (Count VI); intentional misrepresentation (Count VII); negligent misrepresentation (Count VIII); tortious interference with contractual relationship (Count IX); disparagement of title (Count X); invasion of privacy – intrusion upon seclusion (Count XI); invasion of privacy – false light (Count XII); injunctive relief (Count XIII); assault (Count XIV); and intentional infliction of emotional distress (Count XV). (Am. Compl. ¶¶ 36–178).

Appellees first filed a Motion to Dismiss, which resulted in an Order dismissing Count VI. (Adversary Case Docket at 11, ECF No. 1-3). On August 28, 2019, after the completion of discovery, Defendants filed a Motion for Partial Summary Judgment seeking dismissal of all the remaining counts of the Amended Complaint with the exception of Count III. (Defs.' Mot. Partial Summ. J. at 43, ECF No. 16-1).[10] By Order entered April 26, 2021, for the reasons stated on the record in its April 23, 2021 motions hearing, the Bankruptcy Court granted in part and denied in part the Motion. Specifically, the Bankruptcy Court dismissed all Rossi's claims except for Counts XIV and XV, but only insofar as those counts rely upon the purported conduct of the property preservation vendor occurring on September 30, 2017, and Count III, which was not challenged by the Motion.

---

[10] Appellees' Motion for Partial Summary Judgment may be found at pp. 4–58 of Appellees' Appendix.

(Apr. 26, 2021 Order at 1–2, ECF No. 15-1;[11] see MSJ Hr'g at 16:8–17:11). As to the mistaken "stay" that forms part of the basis for this Appeal, the Bankruptcy Court ruled:

> [T]he court[] was . . . unaware of the prior cases filed by [Rossi] and under the misimpression that the automatic stay was in effect when it clearly was not by reason of Section 362(c)(4). . . .
>
> The Court's ruling did not impose the automatic stay. The Court's ruling did not order US Bank to rescind the June 28, 2017, auction and sale. The Court simply found that given the circumstances . . . there has not been cause to grant relief from the automatic stay under Section 363(d). That being the case, US Bank's motion was denied. The limited nature of the Court's ruling as confirmed by the order ultimately entered November 17, 2017 under Docket No. 49 in the main case.

(MSJ Hr'g at 9:15–19, 11:6–14). With respect to Count V, the Bankruptcy Court ruled:

> As to Count 5, there's a claim for trespass for land. The Court finds that the deed of trust clearly allows for inspection of the property. And nothing in the evidence suggests that the actions taken were outside the scope of the consent given by the Plaintiff in the deed of trust.
>
> All we have in evidence is that the inspectors took pictures of the outside of the property and (indiscernible) off the property, photos of the hangers that had been placed upon the door, and at most that they knocked in order to speak to tenants and may have opened windows. Those actions would certainly be considered reasonable for the lender to determine if the property was occupied or not, which is pertinent to whether the property was being taken care of or at a higher risk of damage. Count 5 must therefore be dismissed and summary judgment is granted thereon in favor of the Defendants.

(Id. at 13:11–14:2).

---

[11] The Bankruptcy Court's April 26, 2021 Order may be found at pp. 153–54 of the Rossi Appendix.

On September 29 and 30, 2021, the parties proceeded to a two-day bench trial on Counts III, XIV, and XV. At the conclusion of Rossi's case, Appellees moved for a judgment on partial findings on all three remaining counts ("Motion for Judgment"). (Sept. 30, 2021 Trial Tr. at 9:9–12:16, ECF No. 15-1).[12] The Bankruptcy Court granted the Motion for Judgment as to all three counts. (Id. at 26:5–7). First, the Court reiterated the ruling it made on summary judgment that there was never an automatic stay in place and, as a result, Appellees could not have acted in violation of the automatic stay:

> First as the automatic stay, Count 3, I don't think I need to restate the Court's ruling made on summary judgment where the Court explained why the automatic stay was not in effect in this case and that, therefore, there was no violation of the automatic stay.
>
> Whatever happened, there was no violation of the automatic stay involved in this case. The stay terminated pursuant to Section 362(c)(4) by reason of prior cases filed and dismissed by Mr. Rossi during the one year prior to this particular case and it wasn't imposed by an order of this Court on a motion made within the 30-day period contemplated by the statute, so there's no such relief available under Count 3 and it must be denied.

(Id. at 26:8–20). The Court further found that the actions taken on September 30, 2017 did not constitute an assault or intentional infliction of emotional distress, and for that reason dismissed Counts XIV and XV. (Id. at 29:9–32:11).

On October 26, 2021, Rossi noted the instant Appeal, through which he challenges the Bankruptcy Court's dismissal of Counts III and V. (ECF No. 1; see App't Br. at 3).

---

[12] The September 30, 2021 Trial Transcript may be found at pp. 169–202 of the Rossi Appendix.

9

Rossi submitted his Designation of Items to be Included in the Record on Appeal on November 9, 2021, and the Bankruptcy Court transmitted the majority of the designated items on November 30, 2021. (ECF Nos. 4, 4-1). Rossi filed his Brief on January 20, 2022, (ECF No. 15),[13] and on February 22, 2022, Appellees filed an Opposing Brief (ECF No. 16). Rossi has not filed a reply and the time to do so has expired. See Fed.R.Bankr.P. 8018(a)(3); Local Rule 105.2(a) (D.Md. 2021).

## II.     DISCUSSION

### A.     Standard of Review

Rossi filed this bankruptcy appeal under 28 U.S.C. § 158(a). Bankruptcy appeals "shall be taken in the same manner as appeals in civil proceedings generally are taken to court of appeals from the district courts." 28 U.S.C. § 158(c)(2). On appeal from the Bankruptcy Court, this Court reviews the Bankruptcy Court's findings of fact for clear

---

[13] Under the Federal Rules of Bankruptcy Procedure, "[t]he appellant must serve and file a brief within 30 days after the docketing of notice that the record has been transmitted or is available electronically." Fed.R.Bankr.P. 8018(a)(1). In the docket text appended to ECF No. 4 in the CM/ECF system, the Clerk noted that the appellant brief was thus due on December 30, 2021. On January 11, 2022, with no brief having been filed, the Court directed the parties to include argument on the issue of timeliness in their Briefs. (ECF No. 14).

Counsel for Rossi defends the timeliness of his filing based on information he asserts was conveyed to him by this Court's assistant. (App't Br. at 14–15). The description of that conversation presented by Rossi's counsel differs from the Court's understanding of the conversation in potentially material ways. However, Appellees "are satisfied with the explanation provided by Mr. Rossi's counsel, so do not press one way or the other" on the issue of timeliness. (Br. Defs.-Appellees at 13 n.3, ECF No. 16). Further, absent prejudice to a party, an untimely brief should be considered on the merits. See In re Mallas Enters., Inc., 37 B.R. 964, 966–67 (B.A.P. 9th Cir. 1984). Appellees do not argue that the potentially untimely filing prejudiced them. Accordingly, the Court will consider the brief on the merits.

error and conclusions of law de novo. See In re Merry-Go-Round Enters., Inc., 400 F.3d 219, 224 (4th Cir. 2005); In re Kielisch, 258 F.3d 315, 319 (4th Cir. 2001). "[T]he decision of a bankruptcy court 'must be affirmed if the result is correct' even if the lower court relied upon 'a wrong ground or gave a wrong reason.'" Okoro v. Wells Fargo Bank, N.A., 567 B.R. 267, 271 (D.Md. 2017) (quoting SEC v. Chenery Corp., 318 U.S. 80, 88 (1943)). Thus, this Court may "affirm the bankruptcy court on any ground supported by the record." LeCann v. Cobham (In re Cobham), 551 B.R. 181, 189 (E.D.N.C.), aff'd, 669 F.App'x 171 (4th Cir. 2016), reh'g denied (Nov. 29, 2016).

**B.     Analysis**

Rossi argues that the Bankruptcy Court erred as a matter of law in granting summary judgment in favor of Appellees on Count V and by granting the Motion for Judgment as to Count III upon finding that there was no automatic stay in place. The Court will analyze each argument in turn.

**1.     Violation of the Automatic Stay (Count III)**

As set forth above, on November 10, 2015, the Property became the subject of the Foreclosure Suit. (Cir.Ct.Md. Docket at 1). A foreclosure auction of the Property took place on June 28, 2017. (MSJ Hr'g at 8:19–24). The day before the foreclosure auction, Rossi became the subject of an involuntary bankruptcy petition in the Bankruptcy Court. See In re Ronald P. Rossi, Jr., Pet. No. 17-18747 (Bankr.D.Md. filed June 27, 2017). Ordinarily, such a petition would cause an automatic stay to go into effect as to any proceedings potentially affected by the bankruptcy, including foreclosure proceedings. See 11 U.S.C. § 362(a). Here, however, the automatic stay did not go into effect because Rossi had filed

two bankruptcy cases that were dismissed within one year prior to the involuntary petition. See 11 U.S.C. § 362(c)(4)(A)(i); see also In re Ronald P. Rossi, Jr., Pet. No. 16-19317 (Bankr.D.Md. filed July 12, 2016); In re Ronald P. Rossi, Jr., Pet. No. 17-13537 (Bankr.D.Md. filed Mar. 15, 2017).

On July 19, 2017, unaware that no automatic stay was in effect, US Bank filed a motion in the Bankruptcy Court seeking relief from the automatic stay. (MSJ Hr'g at 8:25–9:3). Following a hearing on September 18, 2017, the Bankruptcy Court denied the motion for relief from the automatic stay. (Mot. Relief Hr'g at 14:8–19). Despite this, US Bank and Altisource continued to engage in efforts to enforce the mortgage lien, including filing a final auditor's report, declining to void the foreclosure sale, and monitoring the Property. (Am. Compl. ¶¶ 63–66).

Rossi argues that although an automatic stay did not go into effect under 11 U.S.C. § 362, the Bankruptcy Court effectively imposed a stay through its September 18, 2017 ruling through the "law of the case" doctrine. Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." TFWS, Inc. v. Franchot, 572 F.3d 186, 191 (4th Cir. 2009) (quoting United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999)). "The doctrine was developed to provide judicial efficiency and consistency; without it a court would be asked to continuously reconsider legal conclusions it had already made at every step of the litigation." In re Schweiger, 587 B.R. 469, 474 (Bankr.D.Md. 2018); see also Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988) (observing that the doctrine "promotes the finality and efficiency of the judicial process by protecting against

12

the agitation of settled issues" (internal quotation marks omitted)). However, "the law of the case applies only to issues that have actually been decided." United States v. Bennerman, 785 F.App'x 958, 963 (4th Cir. 2019); see also WW, LLC v. Coffee Beanery, LTD, No. WMN-05-3360, 2013 WL 3776944, at *5 (D.Md. July 17, 2013) (explaining that a "holding" means "a court's determination of a matter of law pivotal to its decision").

Rossi contends that the Bankruptcy Court established the "law of the case" that an automatic stay was in effect when it ruled that (1) "[t]he motion for relief from automatic stay [was] going to be denied," (2) found that there was not "cause to grant relief from the automatic stay," and (3) further found that "everything that [] happened in state court after June 27th, when the involuntary petition was filed, [was] . . . in violation of the automatic stay." (Mot. Relief Hr'g at 14:8–20).

The Court disagrees. As Appellees correctly argue, "the issue of whether there was a stay in effect was never before the Bankruptcy Court at the time of the hearing on US Bank's Stay Relief Motion. Rather, as the Stay Relief Motion makes plain, it only sought relief from the stay, not any determination of whether there was a stay in effect." (Br. Defs.-Appellees ["App'e Br."] at 16, ECF No. 16). In other words, the only thing the Bankruptcy Court decided was that good cause did not exist for relief from stay. See Dillon v. BMO Harris Bank, N.A., 787 F.3d 707, 715 (4th Cir. 2015) (holding that the law of the case doctrine did not apply because the initial order "contained no rule of law that dictated the resolution" of the later motion); Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 34 (1st Cir. 1994) ("In a relief from stay hearing, the only issue properly before the court, and thus the only one actually adjudicated, is whether the stay should be lifted because a creditor

13

has shown a colorable claim."). While the clear implication of the Order is that a stay <u>was</u> in effect, an implicit finding is not a "determination of a matter of law." <u>WW, LLC</u>, 2013 WL 3776944, at *5.

For these reasons, the Court finds that the Bankruptcy Court did not effectively impose a stay through its September 18, 2017 ruling under the law of the case doctrine. Even if it had, though, the Court would still reject the Appeal as to Count III because the law of the case doctrine is "'discretionary' rather than 'mandatory,' and admits of a variety of exceptions." <u>Owens v. Stirling</u>, 967 F.3d 396, 425 (4th Cir. 2020), <u>cert. denied</u>, 141 S.Ct. 2513 (2021). One of those exceptions arises where "the prior decision was clearly wrong." <u>Bennerman</u>, 785 F.App'x at 963; <u>see generally</u> <u>Christianson</u>, 486 U.S. at 817. Thus, even if the Bankruptcy Court had squarely held that an automatic stay was in place, such a finding would have been clearly wrong and therefore would not have bound the Bankruptcy Court during subsequent decisions.

The Court holds there was no automatic stay under 11 U.S.C. § 362(a) in place by operation of law when Appellees engaged in acts to enforce a lien against Rossi's property. Accordingly, the Court will affirm the Bankruptcy Court's ruling granting Appellees' Motion for Judgment as to Count III.

**2.   Trespass (Count V)**

In Count V of the Amended Complaint, Rossi alleged that Appellees "and their agents" entered the Property "without legal authority or permission." (Am. Compl. ¶ 84). Here, Rossi argues that the Bankruptcy Court erred in granting summary judgment in favor of Appellees on Count V because although the Deed of Trust did grant US Bank certain

inspection rights, the Bankruptcy Court did not consider whether US Bank or its agents had exceeded the scope of their authority under the Deed of Trust.

Consent to entry upon land constitutes a "complete defense" to a trespass action, but only "so long as the scope of that consent is not exceeded." Mitchell v. Balt. Sun Co., 883 A.2d 1008, 1014–15 (Md.Ct.Spec.App. 2005); see, e.g., id. at 1019 ("[B]y continuing to stay after being asked to leave, the reporters exceeded the scope of any consent, even if the reporters did not commit a trespass in entering the room."). This Court has recognized that a Deed of Trust generally gives a lender the right to inspect a property, but only if the actions taken to perform the inspection are "reasonable." See Webb v. Green Tree Servicing, LLC, No. ELH-11-2105, 2013 WL 5442423, at *25 (D.Md. Sept. 30, 2013) (finding that to "look into the front window of an empty house" was "de minimis" and thus "reasonable"); Beatty v. BAC Home Loans Servicing, LP, No. RDB-10-2229, 2011 WL 2516394, at *3 (D.Md. June 21, 2011) (finding that it was "reasonable" for a lender to inspect the property by doing "two drive-by inspections"). Rossi argues that the Bankruptcy Court failed to consider evidence that Appellees exceeded their authority when they entered the Property to "harass Mr. Rossi, his tenants and invitees" and engaged in activity that made "Rossi's son believe he would be run over by a truck." (App't Br. at 16).

Appellees respond that Rossi cannot show that Appellees' agents exceeded their authority because the Bankruptcy Court found that the actions of those individuals on September 30, 2017 did not constitute assault or intentional infliction of emotional distress, a finding Rossi does not challenge on appeal. (See App'e Br. at 38–39 ("Rossi failed to establish any tort occurring on September 30, 2017. Therefore, any shortcomings by Judge

Rice in entering summary judgment on the trespass claim, was harmless error.")). In the Court's view, this argument misses the mark. There is significant daylight between activity that modestly exceeds the scope of "reasonable" inspections on the one hand, and activity constituting assault or intentional infliction of emotional distress on the other hand. Thus, the Bankruptcy Court's unchallenged finding that Rossi did not present evidence sufficient to sustain a claim of assault or intentional infliction of emotional distress does not preclude Rossi's claim that Appellees or their agents trespassed on his land.

Rossi's Appeal fails, however, because he did not introduce evidence linking the actions of September 30, 2017 to Appellees. Under the doctrine of respondeat superior, a principal may be vicariously liable for the tortious conduct of its agent when that agent is acting within the scope of the master-servant relationship. Perry v. Asphalt & Concrete Servs., Inc., 133 A.3d 1143, 1154–55 (Md. 2016). "Where the nature of the relationship between a principal and an agent is in dispute, the ultimate test for whether an agent is a servant is control, for a master 'controls or has the right to control the physical conduct of the [servant] in the performance of the service.'" Schweizer v. Keating, 150 F.Supp.2d 830, 839 (D.Md. 2001) (quoting Hunt v. Mercy Med. Ctr., 710 A.2d 362, 376 (Md.Ct.Spec.App. 1998)). "The rule of respondeat superior does not apply . . . when the wrongdoer is an independent contractor." Id.

To establish a principal-agent relationship between Appellees and the individuals who allegedly harassed Rossi and others at the Property on September 30, 2017, Rossi had to show that "1) the agent was subject to the principal's right of control; 2) the agent had a duty to primarily act for the benefit of the principal; and 3) the agent held the power to alter

16

the legal relations of the principal." Schramm v. Foster, 341 F.Supp.2d 536, 543 (D.Md. 2004). Rossi bore the burden of proving the existence of a principal-agent relationship. White v. Date Trucking, LLC, No. ELH-17-1177, 2018 WL 2462921, at *8 (D.Md. June 1, 2018) ("When a party asserts a claim that is dependent upon an agency relationship created by inference, that party has the burden of proving the existence of the principal-agent relationship, including its nature and its extent.").

Here, Rossi introduced no such evidence. Appellees presented testimonial evidence through which both Appellees unambiguously maintain that they did not employ the individuals who performed inspections of the Property, nor did they retain or have supervisory authority over the inspectors dispatched to the Property. (See Raleigh Decl. ¶¶ 18–20; Decl. D. Strathy-Miller ¶¶ 6–21, ECF No. 16-1).[14] Rossi makes several conclusory allegations that the individuals that harassed him, his son, and his tenants were "agents" of Appellees. (See, e.g., Am. Compl. ¶¶ 84–86). But a party opposing a summary judgment motion "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)); see also Green v. H & R Block, Inc., 735 A.2d 1039, 1048 (Md. 1999) ("If the party alleging the existence of a principal-agent relationship fails to produce sufficient evidence to allow a reasonable fact finder to conclude that such a relationship

---

[14] The Declaration of David Strathy-Miller, Senior Manager of Client and Product Implementation and Field Services for Altisource, may be found at pp. 99–101 of Appellees' Appendix.

17

exists, then summary judgment would be proper on the agency issue."). Rossi has not met that burden here.

This Court routinely grants summary judgment as to claims premised on vicarious liability where a party has failed to introduce evidence establishing an agency relationship. See Schramm, 341 F. Supp. 2d at 543–46; Stenlund v. Marriot Int'l, Inc., 172 F.Supp.3d 874, 885–87 (D.Md. 2016); Danner v. Int'l Freight Sys. of Wash., LLC, 855 F.Supp.2d 433, 455–57 (D.Md. 2012). Rossi provides no reason that the Court should deviate from that practice in this case. Accordingly, the Court finds that the Bankruptcy Court did not err in granting summary judgment in favor of Appellees on Count V and will affirm.[15]

### III.   CONCLUSION

For the foregoing reasons, the Court affirms the Order issued by the Bankruptcy Court entering judgment in favor of Appellees US Bank National Association, as Trustee for BAFC 2006-D, and Altisource Solutions, Inc., in Rossi's Adversary Proceeding, No. DER-18-12 (D.Md.). A separate Order follows.

Entered this 1st day of August, 2022.

                                                      /s/
                                      George L. Russell, III
                                      United States District Judge

---

[15] It is true that the grounds for the Court's affirmance as to Count V differ from the grounds on which the Bankruptcy Court dismissed Count V. But as set forth above, "the decision of a bankruptcy court 'must be affirmed if the result is correct' even if the lower court relied upon 'a wrong ground or gave a wrong reason.'" Okoro, 567 B.R. at 271 (quoting Chenery, 318 U.S. at 88). Thus, this Court may "affirm the bankruptcy court on any ground supported by the record." LeCann, 551 B.R. at 189.